GRACE FINKLE, ADMINISTRATRIX (ESTATE OF MARY FARRELL) *v.* RONALD MARINO ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued October 4—decided December 3, 1963

*Morris Tyler,* with whom, on the brief, was *Peter C. Dorsey,* for the appellants (defendants).

*David M. Reilly, Jr.,* for the appellee (plaintiff).

COMLEY, J. The plaintiff recovered a verdict for substantial damages for the death of Mary Farrell, who was fatally injured when her husband's automobile, in which she was riding as a passenger, collided with a car driven by the defendant Ronald Marino. The accident occurred about 9:15 p.m. on November 14, 1959, at the intersection of Ridge Road and Dixwell Avenue in North Haven. Joseph Farrell was driving north on Ridge Road; Marino, east on Dixwell Avenue. It was a dark night, and it was raining heavily. As Joseph approached the southeast corner of the intersection, he was confronted by a stop sign which was located on Ridge Road about thirty-three feet south of the southerly curb line of Dixwell Avenue and by two parallel white stop lines about thirteen feet north of the sign. As Marino approached the southwest corner of the intersection, he was driving in the more southerly of the two eastbound lanes on Dixwell Avenue. About two hundred feet from the corner, there was a sign indicating an intersection ahead. In this area Dixwell Avenue is on an upgrade toward the east, and on the south side of the highway there is a bank which is four or five feet high and which, in combination with the grade of Dixwell Avenue, prevents a driver in Marino's position from seeing a car at the stop lines on Ridge Road until he is within a few car lengths of the intersection. The bank also obscures the vision of a driver going north on Ridge Road until he reaches the stop lines.

The foregoing facts were not in serious dispute. There was, however, a sharp divergence between the testimony of the two drivers as to the operation of their cars. Joseph claimed that he brought his

car to a full stop at the stop lines, that he rolled down his rain-covered window and looked to his left, that on seeing no traffic coming from that direction, he drove across two of the three traffic lanes of Dixwell Avenue and was then struck by Marino, who had not looked to his right down Ridge Road and had not lessened his speed as he entered the intersection. Marino, on the other hand, claimed that he did look but saw no car and no lights from any car until he had entered the intersection at a speed of twenty-five miles per hour.

It is obvious that an important, if not the paramount, issue in the present case concerns the right of way at this intersection. From the standpoint of each party, it was indispensable that the legal principles bearing on that issue be carefully and accurately presented to the jury.

The collision occurred on November 14, 1959. The statute then defining the right of way at such an intersection as this one was General Statutes § 14-301 (c), as amended by Public Acts 1959, No. 163, providing as follows: "The driver of a vehicle shall stop in obedience to a stop sign at such clearly marked stop line or lines as may be established by the traffic authority having jurisdiction or, in the absence of such line or lines, shall stop in obedience to a stop sign at the entrance to another highway and shall yield the right of way to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but such driver, having so yielded, may proceed and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding."

This provision, so far as it affects the issues in the present case, was originally enacted in 1955.

Cum. Sup. 1955, § 1404d. It was an amendment to § 2520 (c) of the Revision of 1949, which had been in existence in substantially the same form for many years and which provided in part as follows: "The operator of any vehicle who has brought such vehicle to a full stop in accordance with the provisions of this section, upon entering the through way, as well as operators of vehicles upon such through way, shall be subject to the provisions of the statutes relating to the right of way at intersections."

The 1955 amendment introduced a radical change into the statute. Since 1955, a driver who has come to a full stop is obliged to yield the right of way to any approaching vehicle, whether on his right or left, which constitutes an immediate hazard. Before 1955, a driver who had come to a full stop had the right of way on entering the throughway over a vehicle approaching from his left, provided they were arriving at the intersection at approximately the same time. The radical change was due to the fact that the earlier statute, having imposed the duty of stopping on the driver approaching a stop sign, thereafter left him and drivers approaching on the throughway subject to the same rights and duties as drivers at intersections without stop signs, whereas the later statute not only imposes the duty of stopping but fully defines the rights and duties of a driver after he has stopped without reference to any other statute; and these rights and duties are the same whether the other vehicle is approaching from his right or his left.

In discussing the effect of the stop sign, the trial court instructed the jury as follows: "Now, the right of way of an operator on a throughway or through highway—and I say to you that it is undisputed that Dixwell Avenue is a through street in

this case—is not absolute. Once the operator of a vehicle approaching from the right has complied with the stop sign regulation, he has the superior right of way, if the vehicles arrived at the intersection at approximately the same time."

This instruction was in accordance with our law prior to 1955 but contrary to the law as it stood when the accident happened. In fact, the language of the instruction is taken almost literally from *Graveline* v. *Livingston,* 130 Conn. 397, 400, 34 A.2d 732, decided in 1943, in which the earlier statute was construed. The instruction was erroneous and prejudicial to the defendants. If the jury found, as they might have done, that Joseph stopped at the stop lines on Ridge Road and then went forward into the intersection as Marino was arriving at the intersection at approximately the same time so that there was a risk of collision, they must have concluded that Joseph, being on Marino's right, had the right of way. Under proper instructions under the applicable statute, the jury, on such a finding of facts, would have been led to conclude that if Marino's approaching vehicle constituted an immediate hazard—as it necessarily would if it was arriving at the intersection at approximately the same time—then Marino, not Joseph, would have the right of way.

Since a new trial must be ordered because of this error in the charge, we do not discuss the other assignments of error. It is sufficient to say that in our judgment none of them involves harmful error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.